UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LUCINDA E. ELLIS,

        Plaintiff,

v.                              Case No:  6:14-cv-1825-Orl-CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

## OPINION AND ORDER

Plaintiff Lucinda Ellis appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons discussed herein, the decision of the Commissioner is reversed, and this matter is remanded pursuant to 42 U.S.C. § 405(g), sentence four.

### I.  Issues on Appeal

Plaintiff raises four issues on appeal: (1) whether the Administrative Law Judge ("ALJ") properly evaluated the opinions of Dr. Abdul Lodhi, Plaintiff's treating rheumatologist; (2) whether substantial evidence supports the finding of the ALJ concerning Plaintiff's mental residual functional capacity ("RFC"); (3) whether the ALJ properly considered Plaintiff's symptoms of fibromyalgia, including severe pain and fatigue, on her ability to work; and (4) whether the hypothetical questioning relied upon by the ALJ was supported by substantial evidence.

## II.   Procedural History and Summary of the ALJ's Decision

On August 5, 2011, Plaintiff protectively filed applications for a period of DIB and SSI alleging that she became disabled and unable to work on December 1, 2008. Tr. 205-15.   The Social Security Administration denied her claim initially on November 1, 2011, and upon reconsideration on January 31, 2012.   Tr. 135-160. Plaintiff requested and received a hearing before ALJ Philemina M. Jones on February 13, 2013, during which she was represented by her attorney.   Tr. 31-71. Plaintiff and vocational expert ("VE") Richard Hall testified at the hearing.

On April 25, 2013, the ALJ issued a decision finding that Plaintiff was not disabled and denied her claim.   Tr. 11-24.   The ALJ first determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011.   Tr. 13.   At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 1, 2008, the alleged onset date.   *Id.*   At step two, the ALJ determined that Plaintiff has the following severe impairments: fibromyalgia, lupus, and depression.   *Id.*   At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   Tr. 14.

In doing so, the ALJ specifically considered the four broad functional areas set out in the regulations for evaluating mental disorders in section 12.00 of the Listing of Impairments, the so-called "paragraph B" criteria.[1]   Tr. 14-15.   In the first

---

[1] 20 C.F.R., pt. 404, subpt. P. app. 1.

functional area of daily living, the ALJ determined that Plaintiff has a moderate restriction.   Tr. 14.   The ALJ noted that during the hearing Plaintiff testified that she lives alone and is able to take care of her personal needs.   *Id.*   The ALJ also noted, however, that Plaintiff indicated during the psychological consultative evaluation that she lives with three roommates in a house, is able to self-structure and execute activities of daily living, but occasionally neglects self-care due to lack of motivation.   *Id.*   The ALJ also discussed that Plaintiff is able to cook things in the microwave and oven, and she is able to do some laundry.   *Id.*      Therefore, the ALJ concluded that Plaintiff has a moderate limitation in daily functioning.

In the next functional area, social functioning, the ALJ found that Plaintiff has moderate difficulties.   *Id.*   The ALJ noted that Plaintiff does not attend religious services; she does no visiting; and she receives no visitors.   *Id.*   On good days, however, Plaintiff is able to have a friend take her to Wal-Mart.   *Id.*   The ALJ discussed that for recreation, Plaintiff does nothing.   *Id.*   Plaintiff reported that she does not get along well with others because of her pain, and her husband left her because of difficulty coping with the pain.   Tr. 14-15.   Plaintiff also indicated that her daughter became frustrated, and she feels all alone.   Tr. 15.   Thus, the ALJ found that Plaintiff has a moderate limitation in social functioning.   *Id.*

In the third functional area of concentration, persistence, or pace, the ALJ found Plaintiff to have mild limitations.   *Id.*   The ALJ indicated that during a psychological consultative evaluation, Plaintiff reported that she is able to

concentrate to watch television and a two-hour movie.   *Id.*   Plaintiff, however, does not pay any bills or manage a checking account.   *Id.*

In the fourth functional area of episodes of decompensation, the ALJ found that Plaintiff had experienced no episodes of decompensation of an extended duration. *Id.*   Accordingly, the ALJ concluded: "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria are not satisfied."   *Id.*

Taking into account the effects of all of Plaintiff's impairments, the ALJ determined that Plaintiff has the RFC to perform less than a full range of sedentary work.   Tr. 15.   The ALJ found,

> [Plaintiff] can sit for 6 hours and stand/walk for 2 hours in an 8-hour day. She can lift 10 pounds occasionally and less than 10 pounds frequently. She can perform frequent climbing of ramps and stairs and occasional climbing ladders. She can perform frequent balancing, stooping, kneeling, crouching and crawling. The [Plaintiff] can perform jobs that can be learned in 30 days or less, occasionally work with others, never work with general public. She should have a job in which she would perform the same job activities repetitively or over and over during an eight-hour day.

Tr. 15-16.   The ALJ found that Plaintiff's impairments were not as severe or limiting as alleged and would not have precluded her from performing work at the assessed RFC.   Tr. 22.   The ALJ found that Plaintiff was unable to perform her past relevant work ("PRW") as a cashier, but there are jobs existing in significant numbers in the national economy that Plaintiff can perform.   Tr. 22-23.   Thus, the ALJ found Plaintiff was not disabled and denied her claim.   Tr. 24.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on September 3, 2014.   Tr. 1-5.   Accordingly, the April 25, 2013 decision is the final decision of the Commissioner.   Plaintiff filed an appeal in this Court on November 7, 2014.   Doc. 1.

### III.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. §§ 404.1520; 416.920.   The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner.   *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).   The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and

whether the findings are supported by substantial evidence.   *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings."   *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) (*citing Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996).   Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.   *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."   *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must

scrutinize the entire record to determine the reasonableness of the factual findings).

It is the function of the Commissioner, and not the courts, to resolve conflicts in the

evidence and to assess the credibility of the witnesses.  *Lacina v. Commissioner,*

2015 WL 1453364, at *2 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656

(5th Cir.1971)).

## IV.  Discussion

### a.  *Whether the ALJ properly evaluated the opinions of Dr. Abdul Lodhi, Plaintiff's treating rheumatologist*

Plaintiff argues that the ALJ failed to provide the requisite "good cause" for

rejecting Dr. Lodhi's opinions.  Doc. 30 at 14.  Further, Plaintiff alleges that the

ALJ's reasons for not crediting Dr. Lodhi's assessments of Plaintiff's physical

limitations are not supported by substantial evidence.  *Id.* at 17.  Plaintiff also

contends that the ALJ erred by failing to evaluate Dr. Lodhi's opinion in accordance

with the regulatory factors.  *Id.* at 21.  The Commissioner responds that the ALJ

appropriately reduced the weight of Dr. Lodhi's opinions because she found Dr.

Lodhi's opinions to be inconsistent[2] with the physician's own findings.  Doc. 31 at 5.

Under the regulations, the ALJ must weigh any medical opinion based on the

treating relationship with the claimant, the length of the treatment relationship, the

evidence the medical source presents to support her opinion, how consistent the

opinion is with the record as a whole, the specialty of the medical source and other

---

[2] The Court agrees with counsel for the Commissioner that in reading the ALJ's opinion in context, the use of the word "consistent" was a typographical error.  *See* Doc. 30 at 5 n.3; Tr. 20.

factors.    *See* 20 C.F.R. § 404.1527(c)(2)-(6).    Opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2).    If the opinion of a treating physician as to the nature and severity of a claimant's impairment is supported by acceptable medical evidence and is not inconsistent with other substantial evidence of record, the treating physician's opinion is entitled to controlling weight.    *Id.*

By contrast, if the ALJ does not accord controlling weight to a treating physician's opinion, she must clearly articulate the reasons for doing so.    *Winschel,* 631 F.3d at 1179.    Although the regulations require that the ALJ consider all factors set forth in 20 C.F.R. § 404.1527(c), the ALJ is not required to expressly address each factor so long as she demonstrates good cause to reject the opinion.    *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).    "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"    *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)); *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 922 (11th Cir. 2007) ("Good cause to discount a treating physician may arise where a report 'is not accompanied by objective medical evidence or is wholly conclusory.'") (quoting *Crawford v. Comm'r*

*of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004)).   "The ALJ may also devaluate the opinion of a treating physician where the opinion is contradicted by objective medical evidence."   *Green*, 223 F. App'x at 922.

On August 22, 2011, Dr. Lodhi completed a RFC questionnaire.   Tr. 424-25. Dr. Lodhi opined that Plaintiff's symptoms constantly would interfere with the attention and concentration required to perform simple work-related tasks.   Tr. 424. He stated that Plaintiff would need to recline or lie down in excess of the typical breaks during the work day.   *Id.*   She cannot walk any city blocks without rest or significant breaks.   *Id.*   She can only sit for five minutes at a time and stand/walk for ten minutes at a time.   *Id.*   During the course of an eight-hour workday, Plaintiff would be able to sit for a total of one hour and stand/walk for a total of one hour.   *Id.* Dr. Lodhi opined that Plaintiff would require a job that permitted shifting positions from sitting, standing or walking.   *Id.*   The report also states she also would need to take unscheduled breaks every ten to twenty minutes, with the breaks lasting twenty to thirty minutes.   *Id.*   Dr. Lodhi further opined that Plaintiff does not have the physical capability to lift or carry less than ten pounds.   Tr. 425.   She has limitations in doing repetitive reaching, handling or fingering.   *Id.*   Dr. Lodhi stated, however, that Plaintiff could use her hands, fingers and arms 90% of an eight-hour workday.   *Id.*   Based on Dr. Lodhi's experience with Plaintiff, and objective medical, clinical and laboratory findings, he estimated that Plaintiff would be absent from work more than four times per month.   *Id.*

Here, the ALJ stated that she assigned little weight to Dr. Lodhi's RFC assessment because it is inconsistent with the doctor's own records, which indicate that although Plaintiff has multiple tender points, she does not have effusions or synovitis and has normal range of motion.   Tr. 20.   The ALJ also stated that Dr. Lodhi's opinions are inconsistent with the records of Plaintiff's family physician, Dr. James J. Macool, indicating that Plaintiff walks daily and the findings of her neurological and lymphatic exams were normal.   Tr. 20, 335, 344.   The ALJ also found Dr. Lodhi's opinion to be inconsistent with the opinions of Dr. Frank Ritucci, a consultative examiner, who found Plaintiff to have decreased range of motion in her shoulders, 5/5 motor strength in her ankles bilaterally and a mildly antalgic gait. Tr. 20, 442-45.

Plaintiff contends it was an error for the ALJ to reject the opinions of Dr. Lodhi based on lack of objective findings. Doc. 30 at 17.   Plaintiff states, "[t]he ALJ's analysis is erroneous as she was looking for objective evidence which simply does not exist in a disability claim based on fibromyalgia." *Id.*   Plaintiff contends that the ALJ failed to apply the principles set forth in Social Security Ruling ("SSR") 12-2p. *Id.*   Plaintiff further alleges that while the ALJ recognized that fibromyalgia often has abnormal diagnostic findings and laboratory tests, she failed to apply such principles in her evaluation.   *Id.* (citing Tr. 16).

The Commissioner states that the ALJ properly evaluated the opinions of Dr. Lodhi, because Dr. Lodhi's opinions were unsupported by objective evidence and inconsistent with his own findings.   Doc. 31 at 5.   The Commissioner notes that Dr.

Lodhi's reports indicate that Plaintiff had "multiple" tender points, but Dr. Lodhi gave no indication as to how many.   *Id.*   Moreover, the Commissioner states that Dr. Lodhi's recommendation that Plaintiff exercise for at least thirty minutes per day conflicts with his opinion that Plaintiff cannot sit or stand/walk for more than fifteen minutes total at any time.   *Id.* at 6.   Additionally, the Commissioner asserts that the level of walking activity described by Dr. Macool and Dr. Ritucci seem to counter Dr. Lodhi's limiting opinion.   *Id.* at 7.   According to the Commissioner, these inconsistencies are good cause to discount the opinions of Dr. Lodhi.   *Id.*

Despite Plaintiff's contention that it is error to cite a lack of objective evidence as a reason in assigning less weight or credibility in fibromyalgia cases, SSR 12-2p explains that some objective evidence is *required* to find that the claimant's fibromyalgia prevents her from performing the functional requirements of work. SSR 12-2p.   The ruling states, "[a]s with any claim for disability benefits, before we find that a person with [a medically determinable impairment of fibromyalgia] is disabled, we must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any [SGA]."   *Id.*   The ruling also acknowledges that, "[f]or a person with [fibromyalgia], we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'"   *Id.*

The Eleventh Circuit has upheld an ALJ's determination to assign reduced weight to a doctor's opinion, even as to the claimant's fibromyalgia, where the doctor's

opinion that the plaintiff was disabled was inconsistent with her treatment records. In *Harrison v. Commissioner of Social Security*, a case in which the plaintiff alleged disability based on, *inter alia*, fibromyalgia, the court noted that despite the doctor describing the plaintiff as "totally and permanently disabled," her treatment records "contain[ed] no indication that Harrison's ailments were so severe that they prevented her from maintaining a job." 569 F. App'x 874, 877 (11th Cir. 2014). Instead, the court noted that the doctor's examinations of the plaintiff "were consistently unremarkable" and lacked any findings that the plaintiff "suffered from any of the paradigmatic symptoms frequently associated with the most severe cases of fibromyalgia, such as joint swelling, synovitis, or tender trigger points." *Id.* The court also highlighted that the doctor in *Harrison* prescribed medications but never recommended more aggressive treatment, and the doctor's opinions could not be rectified with the plaintiff's own reported activities. *Id.* Thus, the court found it was not improper for the ALJ to discount the plaintiff's doctor's opinions as to her fibromyalgia. *Id.* at 878.

In this case, however, the Court finds that it was improper for the ALJ to discount the opinions of Dr. Lodhi. Unlike the Plaintiff is *Harrison* who did not exhibit any of the symptoms frequently associated with the most severe cases of fibromyalgia, here, Plaintiff suffers from multiple trigger points. Tr. 420, 438, 590. Moreover, while Plaintiff may not have had many objective findings on examination, Dr. Ritucci's examination revealed that Plaintiff had a decreased range of motion in

her shoulders.   Tr. 444.   Thus, the Court finds that this case is distinguishable from *Harrison*, and the ALJ improperly discounted the opinions of Dr. Lodhi.

As alleged by Plaintiff, in many fibromyalgia cases, objective findings simply do not exist.  Doc. 30 at 18.   The lack of objective findings alone in fibromyalgia cases is insufficient for an ALJ to reject a treating physician's opinion.   *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 64 (11th Cir. 2010) (citing *Green-Younger*, 335 F.3d 99, 105-08 (2d Cir. 2003)), *Galvan-Flories v. Comm'r of Soc. Sec.*, 2015 WL 1815691, at * 6 (M.D. Fla. 2015).   As the basis for reducing the weight of Dr. Lodhi's opinion, the ALJ discussed Dr. Lodhi's records indicating that Plaintiff has multiple tender points, no effusions or synovitis and has a normal range of motion; Dr. Macool's records that Plaintiff's extremities, hips, and spine were normal as were her neurological and lymphatic exams; and Dr. Ritucci's exam indicating that Plaintiff had decreased range of motion in her shoulders, 5/5 motor strength in her ankles bilaterally, and a mildly antalgic gait.   Tr. 20.   These findings, however, are consistent with individuals with fibromyalgia.   Again, this case is distinguishable from *Harrison*, because in *Harrison*, the plaintiff lacked the findings frequently associated with severe cases of fibromyalgia.   569 F. App'x at 877.

It has been recognized that "fibromyalgia patients manifest normal muscle strength and neurological reactions and have full range of motion."   *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244 (6th Cir. 2007).   Moreover, often times a claimant's subjective complaints are the only means of determining the severity of patient's condition and the functional limitations caused thereby.   *Somogy,* 366 F.

App'x at 64.   In *Somogy*, the court found that the ALJ's decision was not supported by substantial evidence when he discounted the opinion of the plaintiff's treating rheumatologist based on lack of objective findings supporting her claims as it related to the plaintiff's severe impairment of fibromyalgia.   *Id.* at 63-65.   The court reasoned that other than a lack of objective medical findings, there was nothing in the record to suggest that the plaintiff did not suffer the degree of pain she reported to her doctor or that her doctors should have disbelieved her complaints.   *Id.* at 64. Similarly, here there is nothing in the record to suggest that Plaintiff does not suffer the degree of pain she has reported to her doctors, or that her doctors have discredited her reports of pain.   Moreover, Plaintiff had not only her subjective complaints she reported to Dr. Lodhi, Dr. Macool, and Dr. Ritucci, but she also had objective findings supporting her claims such as multiple trigger points and decreased range of motion. Tr. 20, 420, 438, 590.   Additionally, Dr. Ritucci's examination indicated decreased range of motion.   Tr. 444.   As listed in SSR 12-2p and discussed by the Eleventh Circuit, trigger points are one of the paradigmatic symptoms frequently associated with the most severe cases of fibromyalgia.   SSR 12-2p; *see Harrison*, 569 F. App'x at 877.

The ALJ also reduced the weight accorded to Dr. Lodhi's opinions because she found the opinions to be inconsistent with Dr. Lodhi's own opinions and the other evidence of record.   Tr. 20.   As discussed by Plaintiff in her reply brief, the inconsistencies identified by the ALJ as her basis for discounting the opinions of Dr. Lodhi do not appear to be inconsistencies at all.   Doc. 34 at 4.   For example, the

Commissioner argues that Dr. Lodhi's recommendation that Plaintiff try to exercise for thirty minutes or more per day is inconsistent with his finding that Plaintiff cannot sit or stand/walk for more than fifteen minutes total at a time.   Doc. 31 at 6. Plaintiff responds that this statement, in fact, is not inconsistent at all.   Doc. 34 at 4.   Plaintiff states that Dr. Lodhi recommended that Plaintiff walk thirty minutes per day, not thirty minutes at a time; and this recommendation is entirely consistent with Dr. Lodhi's RFC finding.   *Id.*   Moreover, the ALJ stated that Dr. Lodhi's opinion is inconsistent with Dr. Macool's medical records, which indicate that Plaintiff walks daily.   Tr. 20.   Plaintiff again points out that this is not an inconsistency because Dr. Macool does not identity how far or how long Plaintiff was walking.   Doc. 34 at 4.   Thus, the ALJ's finding that this statement was inconsistent is not supported by substantial evidence.

Here, it appears that the ALJ relied on the lack of objective findings and on the purported inconsistent statements in reducing the weight of Dr. Lodhi's opinions. Tr. 20. As addressed, the inconsistent statements may not have been inconsistent after all.   Thus, the only other rationale to reduce the weight of Dr. Lodhi's opinions was the lack of objective findings.   As noted, lack of objective findings alone in a fibromyalgia case is insufficient to reduce the weight of a treating physician. *Somogy,* 366 F. App'x at 64.   Thus, the Court finds that the ALJ decision to reduce the weight of Dr. Lodhi's opinions is not supported by substantial evidence.

Plaintiff also argues that the ALJ erred when she failed to acknowledge that Dr. Lodhi is rheumatologist, because rheumatologists specialize in the treatment of

fibromyalgia.   Doc. 30 at 21.   The regulations provide that an ALJ should consider the specialty of a treating doctor along with the length of treatment. 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).   The Eleventh Circuit has held, however, that an ALJ is not required to explicitly address each regulatory factor the ALJ considers when weighing medical opinion evidence, but when rejecting an opinion the ALJ must show good cause.   *See Lawton,* 431 F. App'x at 833.   Because the Court finds that the ALJ failed to show good cause for rejecting Dr. Lodhi's opinions, the Court will direct the Commissioner also to reconsider Dr. Lodhi's specialty and the length of the treating relationship with Plaintiff.

> b.  *Whether substantial evidence supporting the finding of the ALJ concerning Plaintiff's mental RFC*

Plaintiff next argues that the mental RFC finding is not supported by substantial evidence.   Doc. 30 at 22.   Plaintiff contends that the ALJ's RFC finding is not consistent with the findings of Dr. Mary-Catherine Segota, a consultative examining psychologist, or the findings of Dr. Jeannie Nunez and Dr. Pauline Hightower, both state agency consultants.   *Id.* at 22-23.   In response, the Commissioner states that the ALJ properly found "that Plaintiff was limited to jobs that can be learned in 30 days or less, occasional work with others, no work with the general public and that Plaintiff should have a job where she would perform the same job activities repetitively or over and over."   Doc. 31 at 10; *see* Tr. 16.

When the ALJ finds that an impairment does not meet or equal a listed impairment at step three, as in this case, the ALJ then will proceed to step four to assess and make a finding regarding the claimant's RFC based upon all the relevant

medical and other evidence in the record.   Tr. 15-16. 20 C.F.R. §§ 404.1520(e), 416.920(e).   Here, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   Tr. 14

The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements.   20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c).   The claimant's age, education and work experience are considered in determining her RFC and whether she can return to her past relevant work; and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite her impairments.   *Phillips*, 357 F.3d at 1238; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. §§ 404.1520(f), 404.1545(a)).   The ALJ must also consider all allegations of physical and mental limitations, not just those determined to be severe.   20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p; *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986).   The ALJ is required to consider the combined effects of a claimant's alleged impairments and make specific, well-articulated findings as to the effect of the impairments and whether they result in disability.   *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).   "When a claimant cannot perform a full range of work at a given level of exertion or has non-exertional impairments that significantly limit basic work skills, the preferred method of demonstrating that a claimant can perform other jobs is through the

testimony of a VE." *Smith v. Soc. Sec. Admin.*, 272 F. App'x 789, 799-800 (11th Cir. 2008) (citing *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999)).

As discussed above, when determining how much weight to afford an opinion, the ALJ considers whether there is an examining or treatment relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6).   Findings of fact made by state agency medical and psychological consultants as to the nature and severity of a claimant's impairments must be treated as expert opinion evidence of nonexamining sources by the ALJ, but the ultimate opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner.   SSR 96-6p; 20 C.F.R. § 404.1527(d)(1)-(2).   Unless a treating source's opinion is given controlling weight, the ALJ must explain the weight given to the opinions of other consultants, doctors or medical specialists.   20 C.F.R. § 404.1527(e)(2)(ii); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006).

In the Eleventh Circuit, the law is clear that "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 630 F.3d at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).   The court reiterated in *Winschel*, "[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the

merits of the claim is rational and supported by substantial evidence."   630 F.3d at 1179 (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).   An ALJ who fails to "state with at least some measure of clarity the grounds for his decision" cannot be affirmed because the court cannot perform its duty to "scrutinize the record as a whole to determine whether the conclusions reached are rational."   630 F.3d at 1179 (citations omitted).

Dr. Segota performed a general clinical evaluation with mental status on October 27, 2011.   Tr. 447.   Dr. Segota's initial observation of Plaintiff was that Plaintiff appeared neatly groomed with good hygiene.   Tr. 448.   Dr. Segota noted that "[Plaintiff] rocked throughout the evaluation, and fluttered her right hand which she said she does in order to cope with the pain."   *Id.*   Dr. Segota also observed that Plaintiff stood intermittently throughout the exam.   *Id.*   As far as Plaintiff mental status during the examination, Plaintiff was oriented 3/3.   *Id.*   Dr. Segota noted that Plaintiff's consciousness was clear with varying concentration.   *Id.*   Dr. Segota indicated that Plaintiff's mood was sad and her affect was anxious and tearful.   Tr. 449.   Plaintiff also exhibited symptoms of depression, including sadness, rumination, lack of motivation, varying appetite, decreased energy throughout the day, hopelessness, and rapid and loud speech.   *Id.*   Dr. Segota found Plaintiff's immediate, recent and long-term memory to be intact.   *Id.*   Plaintiff was able to perform simple calculations, such as simple addition and subtraction, but not multiplication or division.   *Id.*   Plaintiff's judgment for independent functioning also was intact.   *Id.*   Dr. Segota diagnosed Plaintiff with a mood disorder not

otherwise specified, ruled out bipolar disorder, and reported a GAF score of 45.   Tr.

450.   Dr. Segota also opined that Plaintiff likely would be able to manage funds

without significant supervision, should she be awarded any benefits.   *Id.*

Dr. Nunez completed a mental RFC and opined that Plaintiff has limitations

in understanding and memory.   Tr. 82.   She opined Plaintiff also is moderately

limited in her ability to understand and remember detailed instructions but should

be able to remember short and simple instructions.   *Id.*   Dr. Nunez also stated that

Plaintiff has limitations in sustained concentration and persistence.   Tr. 83.   Dr.

Nunez further opined that Plaintiff is moderately limited in her ability to carry out

detailed instructions, maintain attention and concentration for extended periods,

complete a normal workday and workweek without interruptions from

psychologically based symptoms, and to perform at a consistent pace without an

unreasonable number and length of rest periods.   *Id.*   Dr. Nunez elaborated that,

> [Plaintiff] should be able to carry out simple instructions but due to
> reported difficulties [Plaintiff] may have moderate difficulties in
> carrying out detailed instructions. [Plaintiff] may be moderately limited
> in her ability to concentration (sic) and attention (sic). [Plaintiff] can
> perform activities within a schedule, sustain ordinary routine w/out
> supervision and make simple work related decisions. [Plaintiff] is
> moderately limited in her ability to complete a normal work week w/out
> interferes (sic) from psych sympts (sic) as [Plaintiff] currently attends
> GED classes.

*Id.*   She reported Plaintiff also is moderately limited in her ability to get along with

the general public, maintain socially appropriate behavior and to adhere to basic

standards of neatness and cleanliness.   Tr. 84.   Dr. Nunez further opined that

Plaintiff has adaptive limitations.   *Id.*   Specifically, Plaintiff would be moderately

limited in her ability to respond appropriately to changes in the work setting.  *Id.* Ultimately, Dr. Nunez found that while Plaintiff has some difficulties in mental health functioning, she should be able to work as long as her physical impairments allow, but it would be best for Plaintiff to work in a low stress environment.  *Id.*  Dr. Hightower's findings were very similar to those of Dr. Nunez.  Tr. 110-13.

First, Plaintiff argues that her GAF score of 45 is consistent with an inability to work.  Doc. 30 at 23.  The Court is not persuaded with this argument.  A GAF score is merely a global reference intended to aid in treatment, but it does not necessarily reveal a particular type of limitation, and it is not an assessment of Plaintiff's ability to work.  *Ward v. Astrue*, 2008 WL 1994978, at *3 (M.D. Fla. 2008) (stating "an opinion concerning GAF even if required to be accepted as valid, would not translate into a specific finding in regard to functional limitations.") (citing *Jiles v. Barnhart*, 2006 WL 4402937, at *2 n.1 (N.D. Ala. 2006)).  Additionally, the ALJ adequately considered Plaintiff's GAF score when determining the RFC.  Tr. 19. The ALJ specifically recognized that Plaintiff's GAF score is indicative of serious mental symptoms.  *Id.*  The ALJ further noted that despite the GAF score of 45, Dr. Segota did not opine that Plaintiff was unable to work.  *Id.*  The ALJ concluded that, "[t]his assessment has been considered, including the low GAF score, and none of the limitations would prevent the performance of the jobs indicated under the assessment adopted."  *Id.*  Thus, the Court finds no error.

Plaintiff also argues, "in assessing [Plaintiff's] RFC, the ALJ failed to incorporate any: (1) limitations in concentration and attention; (2) limitations in

completing a normal work week without interference from her psychological symptoms; (3) difficulties in responding appropriately to changes in the work [setting]; and (4) need for a low stress environment." *Id.* at 24.   Plaintiff asserts that the ALJ's failure to explain why she rejected these limitations warrants a remand.   *Id.*   Again, the Court disagrees.   "An opinion on an applicant's RFC is not a medical opinion, but rather a decision reserved to the Commissioner, to be based on medical sources, and the physician's opinion in this respect is not entitled to deference."   *Shaw v. Astrue*, 392 F. App'x 684, 681 (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1527(e), 416.927(e)).   While the ALJ must consider a medical source statement along with the other record evidence, the determination regarding a Plaintiff's RFC is reserved for the Commissioner.   20 C.F.R. § 404.1527(d).   Here, the ALJ considered all of the evidence when determining Plaintiff's RFC, and she discussed the weight given to each of the doctors.   Although the Court finds that the ALJ's mental RFC is supported by substantial evidence, because the Court finds that remand is appropriate in this case, the Court will direct the Commissioner to reconsider Plaintiff's RFC.

> c. *Whether the ALJ properly considered the effect of Plaintiff's symptoms of fibromyalgia, including severe pain and fatigue, on her ability to work*

It is Plaintiff's contention that because the ALJ failed to properly consider her primary medical condition of fibromyalgia, it resulted in a failure to properly analyze her pain, fatigue and credibility.   Doc. 30 at 25-26.   The Commissioner responds that "[d]isability cannot be established based solely on a claimant's subjective

description of pain and other symptoms." Doc. 31 at 13 (citing 42 U.S.C. § 423(d)(5)(A)). The Commissioner states that the ALJ properly evaluated Plaintiff's subjective complaints pursuant to the statute and the Eleventh Circuit's pain standard articulated in *Wilson*, 284 F.3d at 1225-26.

When assessing the credibility of subjective complaints, such as pain or fatigue, an ALJ considers: (1) evidence of an underlying medical condition; and (2) objective medical evidence either (a) confirming the severity of alleged symptoms, or (b) indicating that the medical condition could be reasonably expected to cause symptoms as severe as alleged. *See* 20 C.F.R. §§ 404.1529, 416.929; *Wilson,* 284 F.3d at 1225-26; *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The pain standard "is fully consistent with the Secretary's regulations." *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991). If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. § 404.1529(c)(1); *Wilson*, 284 F.3d at 1225-26; *Foote*, 67 F.3d at 1561. The ALJ compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause. *See* 20 C.F.R. § 404.1529(c). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of

law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (internal citations omitted).

In this case, the ALJ found that "the medical evidence, including the treatment record, the objective medical findings, and the medical opinion evidence, does not support the degree of limitation alleged and portrayed by the [Plaintiff]." Tr. 22. The ALJ stated that there was little objective evidence to support Plaintiff's contention of disability. *Id.* She explained that Plaintiff had very few ER visits for complaints of fibromyalgia, and Plaintiff's diagnostic testing failed to show any significant abnormalities. *Id.* The ALJ also highlighted Plaintiff's seemingly inconsistent testimony that she lived alone, when she reported to Dr. Ritucci that she lived with roommates. Tr. 17, 20. The ALJ further noted that Plaintiff testified that she had been rocking for ten years, but found Plaintiff's testimony not credible in that regard because Plaintiff had worked at substantial gainful activity levels within the past ten years. Tr. 21. Thus, the ALJ found that Plaintiff was not entirely credible.

Plaintiff argues that this credibility determination is not supported by objective evidence because the ALJ again focused on the lack of objective evidence, which is inappropriate in a fibromyalgia case. Doc. 30 at 28. Moreover, as noted, Plaintiff alleges that the purported inconsistencies are not inconsistencies at all. *Id.* The Commissioner notes that the case law and regulations do not prohibit the ALJ from considering objective findings when making credibility determinations in fibromyalgia cases. Doc. 31 at 14 (citing authority).

While the Court agrees that the ALJ is not prohibited from considering objective evidence, the ALJ also must recognize that in fibromyalgia cases, there may be a lack of objective evidence.   *Somogy,* 366 F. App'x at 64.   Because the ALJ focused on the lack of the objective evidence, the Court is unclear as to whether he considered the subjective nature of fibromyalgia.   Thus, the Court cannot conclude whether the ALJ's credibility determination is supported by substantial evidence; and this matter must be remanded for further evaluation.

> ### d. *Whether the hypothetical questioning relied on by the ALJ was supported by substantial evidence*

Finally, Plaintiff argues that the ALJ failed to include all of Plaintiff's limitations in the hypothetical posed to the VE.   Doc. 30 at 29-30.   The Commissioner responds that the ALJ asked a hypothetical consistent with her RFC finding.   Doc. 31 at 17.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."   *Wilson*, 284 F.3d at 1227.   While true, the ALJ was not required to include findings in the hypothetical that he had considered and properly rejected. *Crawford*, 363 F.3d at 1161; *see also Aquila v. Colvin*, No. 2:13-cv-658-FtM-DNF, 2015 WL 1293020, at *6 (M.D. Fla. Mar. 23, 2015) ("The ALJ is not required to include or consider any alleged limitations that he properly found unsupported in the VE's hypothetical.") (citing *Crawford*, 363 F.3d at 1161).   Because the Court determined that the ALJ erred by failing to consider the uniquely subjective nature of fibromyalgia when she discounted the opinions of Dr. Lodhi, the Court cannot

conclude that the hypothetical posed to the VE included all of Plaintiff's limitations. Thus, the VE testimony is not supported by substantial evidence.

## V.   Conclusion

Upon review of the record, the undersigned concludes that the ALJ failed to apply the proper legal standards, and thus her determination that the Plaintiff is not disabled is not supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1.    The decision of the Commissioner is **REVERSED** and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for the Commissioner to:

> A.  reevaluate the weight accorded to Dr. Lodhi;
>
> B.  reevaluate Plaintiff's mental RFC;
>
> C.  reevaluate Plaintiff's credibility;
>
> D.  pose a new hypothetical to a VE consistent with the RFC findings; and
>
> E.  make any other determinations consistent with this Opinion and Order, or in the interests of justice.

2.    The Clerk of Court is directed to enter judgment in favor Plaintiff, Lucinda E. Ellis, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 30th day of March, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record